UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NISKAYUNA OPERATING CO., LLC,               :

                            Plaintiff,                        :          1:10 Civ. 1265
                                                                      (GLS/DRH)

          -against-                                   :

KATHLEEN SEBELIUS, as Secretary of the United States   :           <u>AMENDED COMPLAINT</u>
Department of Health and Human Services, DONALD
BERWICK, as Administrator of the Centers for Medicare   :
& Medicaid Services, and RICHARD F. DAINES, M.D.,
as Commissioner of Health of the State of New York,       :

                               Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Niskayuna Operating Co., LLC ("Niskayuna"), by its attorneys Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP, for its complaint alleges:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331, 1361 and 1651 and 42 U.S.C. §405(g).

2.       The claims arise under the Social Security Act, 42 U.S.C. §301, et seq., the Medicare Act, 42 U.S.C. §1395 et seq., and the Fifth and Fourteenth Amendments to the United States Constitution.

3.       Venue is based on 28 U.S.C. §1391(b)(2) and (e)(2) and (3) in that a substantial part of the events or omissions giving rise to the claim occurred and the plaintiff resides in this District.

## THE PARTIES

4. Niskayuna is a limited liability company organized under the law of the state of New York and maintains its principal place of business at 1805 Providence Avenue, Niskayuna, NY where it owns and operates a 110-bed skilled nursing facility (the "Facility").

5. Defendant Kathleen Sebelius, sued in her official capacity, is the Secretary of the United States Department of Health and Human Services (the "Secretary"). As such, she is responsible for administering the Social Security Act. 42 U.S.C. §301, et seq. and the Medicare Act, 42 U.S.C. §1395 et seq.

6. Defendant Donald Berwick, sued in his official capacity, is the Administrator of the Centers for Medicare & Medicaid Services, a federal Health and Human Services agency responsible for administering Medicare, Medicaid and other health-related programs.

7. Defendant Richard F. Daines, M.D., sued in his official capacity, is the Commissioner of Health of the New York State Department of Health, the state agency charged with surveying skilled nursing facilities that participate in the Medicare program in the state of New York.

## THE MEDICARE PROGRAM STATUTORY SCHEME AND REQUIREMENTS

8. Medicare is a federally funded and administered program that provides payment for, among other things, skilled nursing services to aged or disabled persons who are eligible for these benefits under the Social Security Act, 42 U.S.C. §§426, 1395c.

9. To qualify to receive payments under Medicare, a participating facility must be certified as meeting the participation requirements established by federal law. See 42 U.S.C. §§1395i-3.

10. The Secretary is responsible for conducting periodic onsite inspections, referred to as surveys, of facilities to determine whether they meet the federal certification requirements and are thus eligible to participate in the Medicare program and to impose remedies against a facility that is not in substantial compliance with participation requirements. 42 U.S.C. §§1395i-3.

11. Substantial compliance means a level of compliance with the requirements of participation such that any identified deficiencies pose no greater risk to resident health or safety than the potential for causing minimal harm. 42 C.F.R. §488.301.

12. Failure to adhere to the federal participation requirements results in deficiencies that are designated as F-tags, whose numbers range from F150 to F522 and are linked to the participation requirements set forth in 42 C.F.R. part 483, such as, for example, quality of life, quality of care, nursing services, physician services, dietary services, pharmacy services, physical environment and others.

13. Deficiencies are further classified by severity. 42 C.F.R. §488.404. Skilled nursing facilities with A, B or C deficiency severity ratings are still in substantial compliance. D, E or F deficiency severity ratings pose no actual harm with potential for more than minimal harm to residents. G, H and I deficiency severity ratings constitute actual harm that does not rise to the level of immediate jeopardy. J, K and L deficiency ratings represent immediate jeopardy to a resident's health or safety.

14. Deficiency ratings are also classified by scope, as being isolated, pattern or widespread. 42 C.F.R. §488.404.

15. The Secretary imposes remedies according to the scope and severity of the deficiency. 42 C.F.R. §488.408.

16. The Omnibus Budget Reconciliation Act of 1987 ("OBRA 87") amended the Medicare Act to set forth specific requirements that skilled nursing facilities must satisfy to participate in the Medicare program, established procedures for conducting surveys of facilities and revised enforcement provisions to add remedies for facilities not meeting the applicable requirements for participation.

17. In particular, OBRA 87 requires the Secretary to provide an array of remedies for skilled nursing facilities which are found not to be in compliance with the requirements for participation in the Medicare program, including directed plans of correction, temporary management and civil monetary penalties for days of noncompliance and termination of Medicare provider agreements. The statute ties the remedies to whether the noncompliance is one which places residents in immediate jeopardy or non-immediate jeopardy situations.

18. The Medicare Act authorizes termination of a skilled nursing facility provider agreement only in cases that pose immediate jeopardy to resident health and safety. 42 U.S.C. §1395i-3(h)(2).

19. The federal regulations, however, state that provider agreements may be terminated when a skilled nursing facility is not in substantial compliance, regardless of whether immediate jeopardy is present. 42 C.F.R. §§488.412, 488.456.

20. The regulations are in direct conflict with the statutory authority granted to the Secretary by Congress.

21. The Secretary contracts with state survey agencies to conduct Medicare surveys on her behalf (42 U.S.C. §§1395aa) and makes certification determinations for most facilities based on the state agency's recommendations. See 42 C.F.R. §488.330.

22. The regulations also provide that state agencies conduct inspection surveys to ascertain a skilled nursing facility's compliance with federal participation requirements. 42 C.F.R. §§488.10 – 488.26.

23. The New York State Department of Health ("DOH") is the New York state agency responsible for surveying skilled nursing facilities that participate in the Medicare program in the state of New York. DOH must conduct standard surveys at least every 15 months and other surveys as frequently as necessary to determine whether a facility complies with the participation requirements, to confirm that the facility has corrected deficiencies previously cited and to determine whether certain changes have caused a decline in the quality of care furnished by a facility within 60 days of a change in ownership, management entity, administrator or director of nursing. 42 C.F.R. §488.308.

24. DOH delivers its findings in written form to the skilled nursing facility referred to as a statement of deficiencies ("SOD").

25. DOH is required to issue an SOD within ten calendar days from the completion of a survey. See 42 C.F.R. §488.110 (j). Upon receipt of the SOD, a facility has ten days to submit

a plan of correction ("POC") to address the deficiencies cited in the SOD. 42 C.F.R. §488.110(k), 488 402(d)(1).

26. Upon acceptance of the POC, DOH is required to assess whether the facility has implemented the POC and has achieved substantial compliance with the participation requirements and in some circumstances undertake an on-site revisit. See 42 C.F.R. §488.110.

27. Skilled nursing facilities have the opportunity to contest DOH's findings in the SOD by an informal dispute resolution proceeding conducted by the state. See 42 C.F.R. §488.331.

28. Skilled nursing facilities are also entitled to a hearing before a federal administrative law judge before the Departmental Appeals Board to contest CMS's determination of noncompliance. 42 U.S.C. §1320a-7(f)(2); 42 C.F.R. §§488.408(g), 498.3(b)(13).

## Defendants' Unlawful Conduct

29. On April 16, 2007, the former owner and operator of the Facility filed a petition for relief under chapter 11 of the United States Bankruptcy Code.

30. In or about July 2007, when the Facility was under prior ownership, DOH designated the Facility as a special focus facility, indicating that the Facility had more problems and more serious problems than most other facilities and a pattern of serious problems that persisted over a long period time.

31. During the 18-24 month period following special focus facility designation, three outcomes are possible: improvement and graduation from the special focus facility designation,

termination of the Medicare provider agreement or an extension of the special focus facility designation.

32. DOH asserted a claim in the prior owner's bankruptcy case in the approximate amount of $8,400,000 and initially refused to grant an operating certificate to a buyer of the Facility absent the buyer's agreement to assume this liability.

33. In July 2008, DOH entered into a stipulation in the bankruptcy case pursuant to which it agreed that a buyer need not be subject to the prior owner's liabilities to DOH in exchange for recovering approximately at least $6,210,000 from or as a result of a sale of the Facility.

34. On September 11, 2009, DOH approved, with contingencies, Niskayuna to purchase the assets of the Facility.

35. From May 5 to 11, 2010, DOH conducted a survey of the Facility, then known as Northwoods Rehabilitation and Extended Care Center at Hilltop and still operated by the prior owner.

36. The survey team leader was George Shaw ("Shaw"), a former employee of the Facility in the capacity of nurse manager, whose employment ended on April 18, 2008.

37. CMS regulations prohibit former employees of a skilled nursing facility from participating on a survey team of the same facility for a period of two years. 42 U.S.C.A. §1395i-3(g)(2); 42 C.F.R. §488.314. Shaw's participation in the survey process of the Facility began two years and 17 days after his employment at the Facility ended.

38. DOH issued an SOD to the Facility on May 25, 2010. The SOD included D, E and F deficiencies (no actual harm with potential for more than minimal harm to residents) and one G level deficiency (actual harm that does not rise to the level of immediate jeopardy).

39. A receiver for the Facility submitted a POC which was accepted by DOH on June 17, 2010.

40. From July 19 to 21, 2010, DOH revisited the Facility and issued an SOD on August 9, 2010, which included D and G deficiencies.

41. The receiver for the Facility submitted a POC, dated August 18, 2010 which was accepted by DOH on August 19, 2010.

42. Having received final approval from DOH for its purchase of the Facility, on August 30, 2010, the owner of Niskayuna closed on the purchase and began operating the Facility as Pathway Rehabilitation & Specialty Care Center.

43. At that time, the Facility had been a special focus facility for 37 months.

44. From September 20 to October 1, 2010, DOH revisited the Facility for the second time and issued an SOD on October 5, 2010, noting only three D or E deficiencies and no harm level.

45. Niskayuna submitted a POC, dated October 6, 2010 which was accepted by DOH on October 7, 2010.

46. On October 15, 2010, DOH revisited the Facility for the third time and began surveying the Facility to determine if it had implemented the October 6, 2010 POC and was in substantial compliance.

47. On October 19, 2010, seven weeks after Niskayuna had closed on the purchase of the Facility, CMS issued to Niskayuna a Notice of Termination, stating:

> CMS has considered the DOH's recommendations. After careful review of the DOH's findings and recommendations, CMS has determined that your facility's **Medicare provider agreement will terminate on November 11, 2010. In addition a Mandatory Denial of Payment for New Medicare/Medicaid Admissions will be effective November 3, 2010 in accordance with 42 CFR 488.417(b)**.
>
> . . .
>
> DOH will ask you to submit a closure plan to facilitate the safe transfer of facility residents.
>
> CMS is required to provide the general public with notice of an impending termination. We will publish a public notice of the termination in The Daily Gazette on October 27, 2010.
>
> If you disagree with this determination, you or your legal representative may request a hearing before an Administrative Law Judge of the Department of Health and Human Services, Departmental Appeals Board. Procedures governing this process are set out in 42 CFR 498.40, et seq. A written request for a hearing must be filed no later than 60 days from the date of receipt of this letter.
>
> . . .
>
> . . . A request for a hearing should identify the specific issues, and the findings of fact and conclusions of law with which you disagree.

48. In the Notice of Termination, CMS indicated in particular that it was not the fact that the Facility was on the special focus facility list that triggered the enforcement response.

49. On October 21, 2010, two days *after* receipt of the Notice of Termination, without prior notice and an ability to gather staff to respond, Niskayuna received a telephone call from

DOH advising Niskayuna that it was conducting an exit conference by telephone, constituting the conclusion of the third revisit. During the exit conference, DOH advised Niskayuna that it was going to be cited with two deficiencies arising from the same incident. DOH did not provide details of the deficiencies other than indicating their generic categories.

50. Niskayuna has until November 11, 2010, only 21 days from the exit conference, to demonstrate that it is in substantial compliance with the participation requirements and avoid termination of its Medicare provider agreement.

51. Yet, to date, Niskayuna has not received an SOD addressing the third revisit.

52. Without the SOD, Niskayuna cannot prepare and submit a POC.

53. Defendants are therefore preventing Niskayuna from coming into substantial compliance with the participation requirements and avoiding termination of its Medicare provider agreement.

54. Niskayuna wishes and intends to file the requisite submission to commence an informal dispute resolution proceeding. But, without the SOD, Niskayuna cannot prepare the requisite submissions to pursue an informal dispute resolution proceeding.

55. On October 25, 2010, Niskayuna submitted a request for an expedited hearing before an Administrative Law Judge of the United States Department of Health and Human Services, Departmental Appeals Board ("DAB").

56. Nevertheless the appeal before the DAB will not be decided before Niskayuna's Medicare provider agreement terminates.

57. DOH has requested that Niskayuna submit a plan of closure of the Facility by October 25, 2010.

58. 81.5% of the Facility's gross revenue comes from participation in the Medicaid or Medicare programs.

59. As of October 22, 2010, Niskayuna's Facility has 107 of its 110 beds filled (97%), including 34 children (16 of whom are ventilator-dependent), seven adult ventilator-dependent residents, 28 traumatic brain injury adults and 38 elderly residents who require rehabilitation.

60. Niskayuna faces the imminent transfer of virtually its entire population to other nursing facilities before it has the opportunity to present its case in a fair hearing before the Departmental Appeals Board or even to commence an informal dispute resolution proceeding.

FIRST CLAIM FOR RELIEF
(Declaratory Judgment re: Fifth and Fourteenth Amendment Due Process)

61. Niskayuna repeats the allegation of paragraphs 1 – 60.

62. Niskayuna has valuable property rights in its Medicare provider agreement.

63. Niskayuna has been denied notice and a meaningful opportunity to be heard in a meaningful manner before termination of its Medicare provider agreement.

64. Niskayuna has no adequate remedy at law.

65. By reason of the foregoing, Niskayuna is entitled to a declaratory judgment that defendants have violated its procedural due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution.

## SECOND CLAIM FOR RELIEF
(Declaratory Judgment re: Violation of the Social Security Act)

66. Niskayuna repeats the allegation of paragraphs 1 – 60.

67. The Secretary can only terminate a facility's participation in the Medicare program where there has been a finding that deficiencies immediately jeopardize the health and safety of residents.

68. The Secretary has adopted regulations which provide that a facility's provider agreement may be terminated absent a finding of immediate jeopardy.

69. The regulations exceed the Secretary's authority as granted by Congress.

70. DOH made no immediate jeopardy findings at the Facility.

71. Nevertheless, DOH recommended termination of the Niskayuna's Medicare provider agreement.

72. The Secretary and CMS issued a notice of termination of Niskayuna's Medicare provider agreement without authority.

73. Niskayuna has no adequate remedy at law.

74. By reason of the foregoing, Niskayuna is entitled to a declaratory judgment that defendants have violated the Social Security Act and the notice of termination is therefore invalid.

WHEREFORE, Niskayuna demands judgment:

a. on the First Claim for Relief, declaring that defendants have violated its procedural due process rights guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution;

b. on the Second Claim for Relief, declaring that defendants have violated the Social Security Act and the notice of termination is therefore invalid; and

c. awarding the costs and disbursements of this action and for such other and further relief as the Court deems just and proper.

October 25, 2010

                              ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, GREENBERG, FORMATO & EINIGER, LLP

By    *s/ Brian A. Bloom*
      Brian A. Bloom (Bar #514869)
      bbloom@abramslaw.com
 1111 Marcus Avenue, Suite 107
 Lake Success, NY 11042
 (516) 328-2300 (telephone)
 (516) 328-6638 (fax)
Attorneys for plaintiff
Niskayuna Operating Co., LLC