UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------- x

NISKAYUNA OPERATING CO., LLC,               :

               Plaintiff,            :      1:10 Civ. 1265
                                                   (GLS/DRH)
     -against-                                  :

KATHLEEN SEBELIUS, as Secretary of the United States :   AFFIRMATION IN SUPPORT
Department of Health and Human Services, DONALD       OF TEMPORARY
BERWICK, as Administrator of the Centers for Medicare :  RESTRAINING ORDER
& Medicaid Services, and RICHARD F. DAINES, M.D.,      AND MOTION FOR
as Commissioner of Health of the State of New York,    :  <u>PRELIMINARY INJUNCTION</u>

               Defendants.            :

---------------------------------------- x

STATE OF NEW YORK    )
                             ) *ss:*
COUNTY OF NASSAU    )

BENT PHILIPSON, affirms under the penalties of perjury:

1.    I am the 100% member of plaintiff Niskayuna Operating Co., LLC ("Niskayuna") which owns and operates the skilled nursing facility (the "Facility") now known as Pathways Nursing and Rehabilitation Center, located at 1805 Providence Avenue, Niskayuna, NY.

2.    The history of the New York State Department of Health ("DOH")'s role in approving Niskayuna's purchase of the assets of the Facility from the prior owner (which was in bankruptcy) and then surveying the Facility is so tainted with bias and conflict of interest that it constitutes yet another reason Niskayuna's procedural due process rights, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and Niskayuna's rights under the Social Security and Medicare Acts are being violated.

Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP
1111 Marcus Avenue, Suite 107
Lake Success, NY 11042

3. At the time I became interested in purchasing the assets of the Facility, I knew that it had been designated as a special focus facility, meaning that it had a particularly troublesome history of deficiencies in meeting the participation requirements under Medicare. I also knew that the owner of the Facility was in bankruptcy. I believed, however, that given my many years of experience in the nursing home industry and the fact I successfully operate 9 other skilled nursing facilities in New York State, I could turn the Facility around and bring it into substantial compliance with requisite performance standards.

4. Our purchase of the assets was subject to DOH approval. To start the process, we submitted a certificate of need application to DOH.

5. The DOH staff conducts the initial review of the application. Their review consists of a financial feasibility and character and competence review. Because this was a change of ownership application of a pre-existing facility, we did not have to undergo a public needs analysis which is typically done for a new facility.

6. The financial feasibility review was comprised of an assessment of whether Niskayuna had sufficient finances properly to establish and operate the proposed facility. The character and competence analysis entailed a ten year review of operations of all health care facilities in which I have been involved in any capacity. Factors considered in such review include findings of facility inspections and surveys, patient abuse complaints and the manner in which I exercised supervisory responsibility over facility operations and the remedial actions, if any, taken after violations were discovered. The results of the staff review are incorporated in what is referred to as a Staff Report, a copy of which is annexed as Exhibit I.

7. The DOH staff's recommendation is then forwarded to the State Hospital Review and Planning Council ("SHRPC") and its subcommittee, the Project Review Committee. SHRPC then makes its own recommendation which is forwarded to the next level of review, the Establishment Committee, a committee of the Public Health Council ("PHC"). The report and recommendations of SHRPC, dated August 18, 2009 is annexed as Exhibit J.

8. The Establishment Committee unanimously approved this application at its August 25, 2009 meeting (copy of the Agenda annexed as Exhibit K) and forwarded it to the PHC, the body within the DOH responsible for reviewing and approving the establishment and transfers of ownership of nursing homes and other health care facilities. PHC is the ultimate decision maker on all applications.

9. At its September 11, 2009 meeting, the PHC unanimously approved the application subject to certain contingencies being satisfied. A copy of the PHC meeting agenda (indicating Establishment Committee recommended approval) is annexed as Exhibit L and a copy of the DOH letter, dated September 22, 2009 notifying us of PHC contingent approval is annexed as Exhibit M.

10. By letters dated July 26, 2010 and August 3, 2010, respectively (copies annexed together as Exhibit N), the PHC approved the filing of the restated articles of organization of Niskayuna and thereafter notified us that all of the contingencies had been fully satisfied. Final approval was thereby issued.

11. Meanwhile, DOH had asserted a claim against the prior owner in the bankruptcy case in the approximate amount of $8,400,000 for unpaid cash receipts assessments, interest and penalties. DOH was apparently not prepared to grant an operating certificate to a buyer of the Facility absent the buyer's agreement to assume this liability. However, as court documents reveal,

the bankruptcy trustee and the unsecured creditors' committee along with the mortgage lender to the prior owner who had commenced a mortgage foreclosure action all agreed that it was in the best interest of all concerned that the Facility be sold.

12. To facilitate the sale, DOH agreed that a buyer need not be subject to the prior owner's liabilities to DOH. In exchange, In July 2008, the parties stipulated and the Bankruptcy Court ordered that DOH would recover approximately $6,210,000 from or as a result of the sale of the Facility. See Ex. G.

13. As soon as we obtained final approval from DOH, we closed on the sale on August 30, 2010 and began operating the Facility. It appears now that at least part of purchase money either directly or indirectly went into DOH's coffers.

14. With the very first DOH visit to the Facility after Niskayuna became the operator, the Facility's performance improved to the extent that we had no deficiencies with any level of harm. See Ex. D. We still had some deficiencies, but how did DOH expect us to fix years of neglect in six or seven weeks?

15. I was therefore shocked when we received notice of the termination of Niskayuna's Medicare provider agreement. Not only had the Facility's compliance markedly improved, but I had passed DOH's character and competence investigation and Niskayuna had passed DOH's financial feasibility investigation. The only explanation left was that DOH had been planning to close this Facility all along and was holding off terminating the Medicare provider agreement until its claim against the prior owner was paid from the sale proceeds. This conclusion is buttressed by the facts that (a) the Facility had been on the special focus facility list for 37 months by then and DOH could

Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP
1111 Marcus Avenue, Suite 107
Lake Success, NY 11042                                                                                                      Page 4 of 5

have recommended termination of the Medicare provider agreement at any time, yet did not and (b) in the Notice of Termination, CMS went out of its way to state that it was not the fact that the Facility was on the Special Focus Facility list that was triggering the enforcement response.

16. I strongly believe that this record evidences a serious bias and conflict of interest on the part of DOH in recommending that Niskayuna's Medicare provider agreement be terminated.

## CONCLUSION

17. For all the foregoing reasons and those set forth in the accompanying papers, Niskayuna's application for a temporary restraining order and motion for a preliminary injunction should be granted.

_____
BENT PHILIPSON

Affirmed to before me on
October 25, 2010

_____
Notary Public

STELLA M. VILARDI
NOTARY PUBLIC, State of New York
No. 01VI6103407
Qualified in Nassau County
Commission Expires Dec. 29, 2011

Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP
1111 Marcus Avenue, Suite 107
Lake Success, NY 11042

Page 5 of 5