DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  335701 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  **NORTHWOODS REHAB & E C F - HILLTOP** | STREET ADDRESS, CITY, STATE, ZIP CODE  **1805 PROVIDENCE AVENUE**  **NISKAYUNA, NY 12309** |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 SS=E | 483.13(c)(1)(ii)-(iii), (c)(2) - (4) INVESTIGATE/REPORT ALLEGATIONS/INDIVIDUALS  The facility must not employ individuals who have been found guilty of abusing, neglecting, or mistreating residents by a court of law; or have had a finding entered into the State nurse aide registry concerning abuse, neglect, mistreatment of residents or misappropriation of their property; and report any knowledge it has of actions by a court of law against an employee, which would indicate unfitness for service as a nurse aide or other facility staff to the State nurse aide registry or licensing authorities.  The facility must ensure that all alleged violations involving mistreatment, neglect, or abuse, including injuries of unknown source and misappropriation of resident property are reported immediately to the administrator of the facility and to other officials in accordance with State law through established procedures (including to the State survey and certification agency).  The facility must have evidence that all alleged violations are thoroughly investigated, and must prevent further potential abuse while the investigation is in progress.  The results of all investigations must be reported to the administrator or his designated representative and to other officials in accordance with State law (including to the State survey and certification agency) within 5 working days of the incident, and if the alleged violation is verified appropriate corrective action must be taken. | F 225 | | 7/9/10 |

| LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**NORTHWOODS REHAB & E C F - HILLTOP**

STREET ADDRESS, CITY, STATE, ZIP CODE
**1805 PROVIDENCE AVENUE**
**NISKAYUNA, NY 12309**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 1

This REQUIREMENT is not met as evidenced by:

Based on medical record review and staff interview during standard recertification survey and complaint investigation (Case #NY00083980), the facility did not ensure that all alleged violations involving resident mistreatment, neglect or abuse were thoroughly investigated, for six (#s 51, 64, 66, 79, 85 and 105) of nine residents reviewed. Specifically, the facility did not ensure that it thoroughly investigated resident allegations of mistreatment/abuse, did not ensure that it prevented further potential resident mistreatment/abuse with other residents while the investigation was in progress, and did not ensure that it thoroughly investigated whether or not an arm brace was properly applied after a resident received a skin tear. This resulted in no actual harm with the potential for more than minimal harm that was not immediate jeopardy. This was evidenced by:

1. Resident #85
The facility did not ensure that it thoroughly investigated an allegation of mistreatment/abuse made by the resident. Additionally, it did not ensure that it prevented further potential resident mistreatment/abuse with other residents while the investigation was in progress.

The resident was admitted to the facility on 12/11/09 with diagnoses of infected right leg status post open reduction internal fixation, chronic leg ulcers and degenerative joint disease. The Minimum Data Set (MDS) dated 4/12/10 assessed the resident as having short term and long term memory problems and moderately impaired decision making skills. | F 225 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 2 | F 225 | | |
| | A Grievance/Complaint Report dated 4/19/10 documented that this resident and another resident had complained about an aide on this date. It was completed by the Social Work Director and documented that this resident stated she was afraid of the aide. It documented that the Registered Nurse Unit Manager (RNUM) and the Social Worker took action to resolve this grievance/complaint on the date of 4/19/10. It documented that the aide was identified, disciplined (written up) and not assigned to care for the residents anymore. It then stated that on 4/21/10 the grievance/complaint was resolved, that the patients were spoken to, had no more issues, and the residents felt safe and secure. | | | |
| | An integrated progress note dated 4/22/10 documented that the resident reported an incident with a Certified Nurse Aide (CNA) where she was a little scared, due to the CNA's behavior. | | | |
| | Attached to this Grievance/Complaint Report was a Disciplinary Report Form completed by the Registered Nurse Unit Manager (RNUM) for one Certified Nursing Assistant (CNA), dated 4/23/10 (four days after the date of the resident's grievance/complaint). It documented that the CNA was told formal complaints were filed about her being sarcastic, rude, and rough with care by three residents (a third resident was not identified in the Grievance/Complaint Report, but was identified on the Disciplinary Report Form). It then stated that as a result of this complaint, the CNA was told she was not to go in to take care of these specific residents until the issue was resolved. On the bottom of this report, it was documented that it was presented to the aide and she refused to sign it. | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER NORTHWOODS REHAB & E C F - HILLTOP | STREET ADDRESS, CITY, STATE, ZIP CODE 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |
|---|---|

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 3

The Grievance/Complaint Report revealed no documented evidence of an interview having been conducted with the resident or of a detailed statement having been obtained from the resident regarding the care complaint made on 4/19/10. There was no documented evidence of staff interviews or statements having been obtained to fully investigate the resident grievance/complaint. There was no documented evidence of how the facility came to their conclusion. The report documented that a disciplinary report was made out for one CNA, that this one CNA was removed from this specific resident's care assignment.

During an interview on 5/10/10 at 9:30 am with the Social Work Director, he stated that he did not consider the statement in the resident's 4/19/10 Grievance/Complaint form a statement of abuse. He stated that in this situation, the Nurse Manager identified the CNA, disciplined her and removed the aide from caring for this resident. He stated that the resident felt safe and secure after the action was taken by talking with her. When questioned how the facility ensured that other residents at the facility were safe, he stated it was the Nurse Manager's responsibility to ensure that the accused CNA was providing good care to the other resident's at the facility.

During an interview on 5/11/10 at 11:15 am with the Registered Nurse Unit Manager (RNUM), she stated that she would consider this resident's grievance to be a statement of mistreatment. She stated that in hindsight she could see how the investigation for mistreatment/abuse should have been more substantial and how it would have been a good idea to interview other staff. She stated that there appeared to be lots of missing pieces to the investigation and that the | F 225 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 4 | F 225 | | |
| | investigation into this resident's grievance was not thorough. | | | |
| | During an interview on 5/11/10 at 11:40 am with the Corporate Director of Nursing, the newly hired Director of Nursing, the Administrator, and the Assistant Administrator, all agreed that their expectation of a thorough investigation would be to first remove the accused staff member from providing resident care, then to interview and obtain statements from all staff on the unit, and follow through with a documented summary of the investigation in order to make a determination as to whether or not mistreatment/abuse had occurred. All stated that they considered this resident's grievance to be one of mistreatment and stated it should have been more thoroughly investigated with staff statements and a summary of the investigation having been documented. All stated that the accused CNA should have been removed from the facility until the investigation was concluded and a determination on whether or not abuse/mistreatment had occurred. | | | |
| | 2. Resident #79 The facility did not ensure that it thoroughly investigated an allegation of mistreatment/abuse made by the resident. Additionally, it did not ensure that it prevented further potential resident mistreatment/abuse with other residents while the investigation was in progress. | | | |
| | The resident was admitted to the facility on 12/5/08 with diagnoses of hypertension, left below elbow amputation, and diabetes mellitus. The Minimum Data Set dated 3/17/10 assessed the resident as having intact short term and long term memory and independent decision making skills. | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 5

A Grievance/Complaint Report dated 4/19/10 documented that this resident and another resident on the unit had complained about a CNA on this date. It was completed by the Social Work Director and documented that this resident described a CNA that had been performing her care on the 3:00 pm to 11:00 pm shift. It documented that the resident described the CNA as mean, rough, and intimidating. It documented that the RNUM and the Social Worker were taking action to resolve this grievance/complaint on the date of 4/19/10.  It documented that the aide was identified, disciplined (written up) and not assigned to care for the residents anymore. It then stated that the grievance/complaint was resolved, that the residents were spoken to on 4/21/10, that they had no more issues and that they felt safe and secure.

There were no Integrated Progress Notes documented in the resident's medical chart regarding this resident's grievance/complaint.

Attached to this Grievance/Complaint Report dated 4/23/2010 was a Disciplinary Report Form completed by the RNUM for one CNA, dated 4/23/10.  It documented that the CNA was told formal complaints were filed about the CNA being sarcastic, rude, and rough with care by three residents. It then stated that as a result of this complaint, the CNA was told she was not to go in to take care of these residents until the issue was resolved.

Review of this Grievance/Complaint Report revealed no documented evidence of an interview having been conducted with the resident or of a detailed statement having been obtained from the resident regarding the care complaint made on | F 225 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  335701 | (X2) MULTIPLE CONSTRUCTION  A. BUILDING _____  B. WING _____ | (X3) DATE SURVEY COMPLETED  05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE  NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 6 | F 225 | | |

4/19/10. There was no documented evidence of staff interviews or statements having been obtained to fully investigate the resident grievance/complaint for a determination of whether or not abuse or mistreatment occurred. There was no documented evidence of how the facility came to the conclusion. There was no documented evidence that investigation into the resident's care grievance/complaint had been conducted for a determination of possible abuse/mistreatment.  It documented that a disciplinary report was made out for one CNA, that this one CNA was removed from this specific resident's care assignment.

During an interview on 5/10/10 at 9:30 am with the Social Work Director, he stated that he would not consider the statement in the resident's 4/19/10 Grievance/Complaint form a statement of abuse. He stated that in this situation, the Nurse Manager identified the CNA, disciplined her and removed the CNA from caring for this resident. He stated he ensured that the resident felt safe and secure after action was taken by talking with her. When questioned how the facility ensured that other residents at the facility were safe, he stated it was then the Nurse Manager's responsibility to ensure that the accused CNA was providing good care to the other resident's at the facility.

During an interview on 5/11/10 at 11:15 am with the RNUM, she stated that she would consider this resident's grievance to be a statement of mistreatment. She stated that in hindsight she could see how the investigation for mistreatment/abuse should have been more substantial and how it would have been a good idea to interview other staff. She stated that there

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 7

appeared to be lots of missing pieces to the investigation and stated that the investigation into this resident's grievance was not thorough.

During an interview on 5/11/10 at 11:40 am with the Corporate Director of Nursing, the newly hired Director of Nursing, the Administrator, and the Assistant Administrator, all agreed that their expectation of a thorough investigation would be to first remove the accused staff member from providing resident care, then to interview and obtain statements from all staff on the unit, and follow through with a documented summary of the investigation in order to make a determination as to whether or not mistreatment/abuse had occurred. All stated that they considered this resident's grievance to be one of mistreatment and stated it should have been more thoroughly investigated with staff statements and a summary of the investigation having been documented. All stated that the accused CNA should have been removed from the facility until the investigation was concluded and a determination on whether or not abuse/mistreatment had occurred.

3. Resident #51
The facility did not ensure it thoroughly investigated whether or not an arm brace was properly applied after the resident received a skin tear.

The resident was admitted to the facility on 11/11/09 with diagnoses of persistent vegetative state, traumatic brain injury, and seizure disorder. The MDS dated 2/18/10 assessed the resident as being comatose so decision making skills and ability to understand or make himself understood were not assessed. | F 225 | | |

FORM CMS-2567(02-99) Previous Versions Obsolete     Event ID:77PN11     Facility ID: 4092     If continuation sheet Page 8 of 21

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 8

The CCP for Impairment in Skin-Tissue Integrity dated 11/11/09 documented that the resident had a skin tear to his right upper arm.

A nurse's note dated 3/13/10 and timed as the 7:00 am to 7:00 pm shift documented that the resident was found to have a skin tear on his right upper arm related to the use of a brace on that arm. The skin tear was found by a CNA and was reported to the nurse who wrote the note.

An Incident and Accident report (I&A) dated 3/13/10 at 1:30 pm documented that the resident's right arm brace had been removed from the resident during care by a CNA who had stated that "the brace was on too tight and while removing it, which caused a skin tear. A written statement from the CNA who discovered the injury was attached to the Incident and Accident (I&A) report. The statement documented that when the CNA removed the splint "it was extremely tight," and when it was removed the "skin of the upper right bicep had smeared off." The I&A report was signed by six Registered Nurses (RN), the facility's previous DON and the facility's previous Administrator.

During an interview on 5/6/10 at 9:25 am, with a Licensed Practical Nurse (LPN) who was familiar with this resident, she stated that the resident was unable to move himself but that he very often waved his arms around while lying in bed or when sitting up in a geri chair.

During an interview on 5/6/10 with the RNUM who had signed the I&A report, she stated that the therapy department had put the brace on this resident on 3/13/10 and that after the skin tear was found she spoke to the Registered | F 225 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>335701 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED<br><br>05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE<br>NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 225 | Continued From page 9<br><br>Occupational Therapist (OT) about discontinuing the brace. The RNUM could not recall if there was discussion concerning who applied the brace and if the brace was applied correctly or not. The RNUM also could not provide documentation of her conversation with the OT. The RNUM also stated that there was no further investigation into the resident's injury, because they knew it was caused by the brace.<br><br>During an interview on 5/6/10 at 1:10 pm with the Assistant Administrator she stated that she was not working at this facility on 3/13/10 and after reviewing the I&A for this resident, said that there should have been a more thorough investigation including an attempt to document who applied the arm brace and whether or not it was applied properly. | F 225 | | |
| F 281<br>SS=E | 10NYCRR 415.4 (b)(1)(ii)<br>483.20(k)(3)(i) SERVICES PROVIDED MEET PROFESSIONAL STANDARDS<br><br>The services provided or arranged by the facility must meet professional standards of quality.<br><br>This REQUIREMENT is not met as evidenced by:<br>Based on medical record review and staff interview, the facility did not ensure that the services provided or arranged by the facility met professional standards of quality for 4 (#s 64, 66, 79 and 86) of 9 residents reviewed, during the standard recertification survey. Specifically, the facility did not ensure a treatment was administered as ordered by the physician, did not ensure that physician's orders for diabetic management were followed as written for | F 281 | | 7/9/10 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |

NAME OF PROVIDER OR SUPPLIER

**NORTHWOODS REHAB & E C F - HILLTOP**

STREET ADDRESS, CITY, STATE, ZIP CODE
**1805 PROVIDENCE AVENUE**
**NISKAYUNA, NY  12309**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 281 | Continued From page 10

residents and did not ensure there was a specific physician's order written for sliding scale insulin administration for a resident. This resulted in no actual harm with the potential for more than minimal harm that was not immediate jeopardy. This was evidenced by:

1. Resident #64
The facility did not ensure a treatment was provided and administered as ordered by the physician.

The resident was admitted to the facility on 4/12/10 with diagnoses of pneumonia, Crohn's disease and an ileostomy. The Minimum Data Set (MDS) dated 4/19/10 assessed the resident as having no memory or decision making impairment.

A physician order dated 4/30/10 documented to use polysporin powder around the resident's ileostomy stoma site as needed.

Nurse's notes dated 5/4/10 documented that the skin around the stoma site was slightly reddened and the area was improving.

The Treatment Administration Record (TAR) for April/May 2010 documented to apply polysporin powder around the resident's ileostomy stoma site as needed. The TARs had no documented nurse's initials to identify that the polysporin powder was ever applied.

During an interview with the resident on 5/11/10 at 9:00 am, he stated that he never received the polysporin powder for the stoma area. He stated he did not know the reason why he had not received the polysporin powder. The resident | F 281 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 281 | Continued From page 11<br><br>stated that his stoma area was red and weeping and that he called his daughter to bring in something for him to use on it.<br><br>On 5/11/10 at 10:36 am the Licensed Practical Nurse (LPN) looked through the treatment cart for the polysporin powder and did not find the polysporin powder. At this time, the LPN called the pharmacy and ordered the polysporin powder.<br><br>During an interview with the Registered Nurse Manager (RNM) on 5/11/10 at 10:40 am, she stated that she was not aware that there was no polysporin powder for this resident. She stated the order was put into the computer and automatically goes to the pharmacy. She stated the nurse taking the order inputs the order in the computer and the pharmacy fills the order.<br><br>During an interview on 5/11/10 at 10:49 am with the person responsible for ordering supplies (title unknown) stated that polysporin powder had to be ordered, because it was not a stocked item. She stated she was not aware of an order for polysporin powder for this resident.<br><br>2. Resident #66<br>The facility did not ensure that Finger Stick Blood Glucose (FSBG) were done as ordered by the physician.<br><br>The resident was admitted to the facility on 11/19/07 with diagnoses of type II diabetes mellitus, mild Alzheimer's disease and hypertension. The MDS dated 4/4/10 assessed the resident as having intact short term and long term memory and modified independence in daily decision making skills. | F 281 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

NAME OF PROVIDER OR SUPPLIER

**NORTHWOODS REHAB & E C F - HILLTOP**

STREET ADDRESS, CITY, STATE, ZIP CODE

**1805 PROVIDENCE AVENUE**
**NISKAYUNA, NY  12309**

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 281 | Continued From page 12

Routine physician's order dated 1/19/10, 2/18/10 and 3/24/10 documented that the resident was to have FSBG, fasting and 4:00 pm, done on Monday and Wednesday with no sliding scale coverage.

The Medication Administration Record (MAR) for February 2010 had no documented evidence of FSBG having been obtained at 4:30 pm on 2/15/10 and 2/22/10. The MAR for March 2010 had no documented evidence of a FSBG having been obtained at 4:30 pm on 3/5/10 or 3/24/10. The MAR for April 2010 had no documented evidence of FSBGs having been obtained at 4:30 pm on 4/13/10 and 4/19/10.

During an interview with the RNM on 5/11/10 at 11:00 am, she stated if the resident's blood sugars were not documented by the nurses on the MARs, then she could only say that they were not done. She stated that the resident's blood sugars should have been documented if they had been taken as ordered.

3. Resident #79
The facility did not ensure that the physician was notified as ordered regarding FSBG greater than 200.

The resident was admitted on 12/5/08 with diagnoses of diabetes mellitus, hypertension and hypoalbuminemia. The MDS dated 3/17/10 assessed the resident as having intact short term and long term memory and independence with daily decision making skills.

Physician's interim orders dated 3/24/10 documented FSBG twice daily on Monday, Wednesday and Friday with no sliding scale. | F 281 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY  12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 281 | Continued From page 13 | F 281 | | |
| | Physician's interim orders dated 4/21/10 documented FSBG twice daily on Monday, Wednesday and Friday, with no scale, but if reading was above 200 or below 70, the MD was to be notified. | | | |
| | The April 2010 MAR documented on 4/21/10 that the resident's FSBG at 4:30 pm was 236. On 4/23/10 at 4:30 pm, the resident's FSBG was documented as 259. On 4/26/10, there was no 4:30 pm FSBG documented for the resident.  On 4/28/10, the resident's FSBG at 4:30 pm was documented as 231. On 4/30/10 the resident's FSBG at 4:30 pm was documented as 243. On 5/3/10 the resident's FSBG at 4:30 pm was documented as 204.  On 5/5/10 the resident's FSBG at 4:30 pm was documented as 247. There was no documented evidence in the Integrated Progress Notes or on the MAR of the physician being notified. | | | |
| | During an interview on 5/11/10 at 11:00 am with the RNM, she stated she would have expected physician notification for blood sugars over 200 since this was how the order read.  She stated if the physician had been notified of these blood sugars over 200, then this would have been documented in a nurse's note in the Integrated Progress notes. She stated that if there was no documented evidence of the physician having been notified in a nurse's note, then the facility had no way to say it had occurred. Additionally, she stated that if an ordered FSBG was not documented on the MAR, then it was not done. | | | |
| | 4. Resident #86 The facility did not ensure that a physician's order was obtained for the administration of insulin per | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 335701 | A. BUILDING _____<br>B. WING _____ | | 05/11/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE<br>NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 281 | Continued From page 14<br>sliding coverage scale.<br><br>The resident was admitted to the facility on 12/16/09 with the diagnoses of diabetes, cellulitis with abscess of the right thigh and hypertension. The MDS dated 4/23/10 assessed the resident to have intact short and long term memory and independent with daily cognitive decision making skills.<br><br>The routine physician orders for March, 2010 documented an order for Novoloq insulin 100 units/millimeter (ml) - see medex (MAR) for sliding scale. There was no documentation of the dose of insulin to be administered for the specific FSBG reading on the physician's order.<br><br>The MAR for the month of March 2010 had documentation to administer Novoloq insulin 100 units/ml per sliding scale when meal available at 7:30 am, 11:30 am, 4:30 pm, and 9:00 pm. The hand written documentation, read to administer 2 units of insulin for FSBG of 141-200, 4 units of insulin for FSBG of 201-250, 6 units of insulin for FSBG of 251-300, 8 units of insulin for FSBG of 301-350, 10 units of insulin for FSBG of 351-400, and notify MD when FSBG was greater than 400.<br><br>During an interview with the RNM on 5/11/10 at 10:50 am, she stated the sliding insulin scale orders were written from the Protocol on admission and were not renewed as per policy for the subsequent months. She also stated that there were no physician orders for insulin coverage from the admission orders of 12/09 until 4/6/10. The RNM stated that there was no specific sliding insulin scale documented in the physician's order for February and March 2010 to identify the amount of insulin to be administered. | F 281 | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  335701 | (X2) MULTIPLE CONSTRUCTION<br>A. BUILDING _____<br>B. WING _____ | (X3) DATE SURVEY COMPLETED  05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE<br>NISKAYUNA, NY  12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 281 | Continued From page 15<br><br>10 NYCRR 415.11(c)(3)(i) | F 281 | | |
| F 325<br>SS=D | 483.25(i) MAINTAIN NUTRITION STATUS UNLESS UNAVOIDABLE<br><br>Based on a resident's comprehensive assessment, the facility must ensure that a resident -<br>(1) Maintains acceptable parameters of nutritional status, such as body weight and protein levels, unless the resident's clinical condition demonstrates that this is not possible; and<br>(2) Receives a therapeutic diet when there is a nutritional problem.<br><br><br>This REQUIREMENT is not met as evidenced by:<br>Based on medical record review and staff and resident interview, the facility did not ensure that acceptable parameters of nutritional status, such as body weight were maintained for one (#86) of three residents reviewed during the standard recertification survey. Specifically, the facility did not ensure that Resident #86, who was known to have a 10 pound (lb) weight loss one week after admission, was reassessed by the Registered Dietitian and monitored consistently for meal intake. In addition, the facility did not ensure the resident's care plan was followed. This resulted in no actual harm with a potential for more than minimal harm that is not immediate jeopardy. This was evidenced by the following:<br><br>Resident #86<br>The resident was admitted to the facility on 12/16/09 with diagnoses of diabetes, depression | F 325 | | 7/9/10 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 335701 | A. BUILDING _____ <br> B. WING _____ | 05/11/2010 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE <br> NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 325 | Continued From page 16 <br><br> and congestive heart disease. The Minimum Data Set (MDS) dated 4/23/10 assessed that the resident had no memory or decision making impairment. This MDS also identified that the resident had a weight loss of 5% or more in the last 30 days. <br><br> The Comprehensive Care Plan (CCP) dated 12/18/09 titled Potential for Altered Nutritional Status due to diabetes, had a goal that the resident's nutritional and hydration status would be met for the next 90 days as evidenced by stable weight, consumes greater than 75% of meals, bowel function within normal limits and signs of fluid balance. The approaches included: diet as ordered (no concentrated sweets, no added salt), monitor weight monthly/weekly, monitor food and fluid intake and nutritional supplements per physician. <br><br> This CCP dated 12/18/09 further documented that on 12/18/09 it was recommended the resident receive 4 ounces (oz) of Glucerna (diabetic nutritional supplement) three times a day secondary to a skin condition. It also documented to watch acceptance and oral intake to determine the need for further intervention. On 2/8/10 it was documented in the CCP that the resident's buttocks wound was healed. On 4/11/10 this CCP documented that the resident remained on the same diet, her appetite was good and the resident requested extra protein to help heal her broken leg. There was another note (undated on this CCP) that documented that the resident was at risk for dehydration due to diuretic use, to encourage fluids via diet and the resident had some weight loss due to the diuretic. <br><br> The Initial Nutritional Assessment written by the | F 325 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 325 | Continued From page 17

Registered Dietitian (RD) dated 12/18/09 documented the resident's estimated needs at: 1800 calories per day, 90-108 grams of protein per day and about 2.7 liters of fluid a day. This assessment documented a hospital weight of 330 lbs and did not note when this weight was obtained. There was no documented facility weight on the assessment. It further documented the resident's appetite at 25% for breakfast today and the resident was at nutrition risk due to the stage two pressure sore on the resident's coccyx. The approaches included to: provide nutrition/hydration needs via meal plan and supplements as needed, provide the resident with menus to allow the resident to choose food likes, monitor weights, laboratory values and intake, recommend 4 oz Glucerna to provide increased protein in meal plan, and provide additional nutrition interventions as necessary.

The Clinical Weight Form documented the resident's weights as follows: 12/18/09 on bed scale = 272 lbs, 12/23/09 on bed scale = 262.8 lbs., done twice, 12/31/09 on bed scale = 257.2 lbs (this represents a 5 % loss based on admission weight of 272 lbs), 1/13/10 on wheelchair scale =262.6 lbs done two times, 1/27/10 on wheelchair scale = 265 lbs, 2/25/10 on wheelchair scale = 257 lbs, 3/23/10 on wheelchair scale = 255 lbs, 4/21/10 on wheelchair scale= 252 lbs. The weight loss from admission to April, 2010 reflected a loss of 7.4%.

The Meal Intake Sheets from December 2009 through April 2010 documented: in 12/2009 of the 10 days available and 30 meals provided, the intake was recorded three times; in 1/2010 there were 26 days available and there were 31 blanks or 40% blank; in 2/2010 there were 27 days | F 325 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 325 | Continued From page 18

available and 47 blanks or 58 % blank; in 3/2010 there were 30 days available and 41 blanks or 46% blank; in 4/2010 there were 30 days available and 38 blanks or 42% blank; and in 5/2010 there were 10 days available and 30% blank.

Integrated Nutrition Progress Notes written by the Diet Technician documented on 12/21/10 that the resident was above Ideal Body Weight, encourage gradual weight loss, intake was down a little and the resident received Glucema 4 oz. three times a day with meals; 12/28/10 that the resident's appetite remains down, she was accepting Glucerna and to continue to encourage the resident to consume meals; 1/11/10 that the resident continued to receive Glucerna and continue current plan; 1/28/10 the "resident's weight of 262 was down from admit weight of 330 lbs " that the resident received Glucerna and eats well at meals; 2/15/10 the resident continued to have good intake at meals; 3/4/10 that the resident's weight was 257 lbs which was down from 265 lbs and that the resident was eating very well at meals, intake book shows 100% at most meals, the resident was receiving a diuretic which accounts for the weight loss and the resident was encouraged to lose weight; 4/5/10 that the resident was concerned about her fractured leg, received Glucerna three times a day, and that Beneprotein would be added three times a day for extra protein and 5/6/10 current weight was 252 lbs. The resident continued to eat well and received a diuretic and would be followed as needed.

During an interview with the resident on 5/11/10 at 1:20 pm, she stated that she did not eat much of anything the first few weeks she was at this | F 325 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | **335701** | A. BUILDING _____ | | |
| | | B. WING _____ | | **05/11/2010** |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| **NORTHWOODS REHAB & E C F - HILLTOP** | **1805 PROVIDENCE AVENUE** **NISKAYUNA, NY 12309** |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 325 | Continued From page 19<br><br>facility as she was not feeling well. In addition, when they would bring her tray into the room, the food looked like cat food and she would send it away. Since then she has been trying to lose some weight. She stated she spoke to the Diet Technician once shortly after admission, was asked if she wanted to lose weight and had not spoken to her since.<br><br>In a telephone interview with the Registered Dietitian (RD) on 5/11/10 at 9:30 am she stated that her expectation would be to be informed of a significant weight loss whether it was desirable or not; an assessment would need to have been completed. She also stated that you need to confirm if the weight loss was accurate and that a meal intake study may have been needed. She stated that the method of the weight loss should be assessed, including the question of water loss and accuracy of food intake. In addition, she stated that the physician should be informed of a significant weight loss, as it could be medical in origin and is part of the resident's care.<br><br>During an interview on 5/10/10 at 12:30 pm with the Registered Nurse Manager (RNM) she stated that if the resident had a significant weight loss, a re-weight should be done. If actual weight loss was confirmed, the RD and the physician should be notified.<br><br>There was no documented evidence in the physician progress notes dated 12/16/09 to 5/10/10 regarding the resident's weight loss.<br><br>During interviews with the Diet Technician on 5/5/20 at 12:00 pm, 5/10/10 at 12:00 pm and again on 5/11/10 at 10:05 am, she was asked about the resident's weight loss. She stated that if | F 325 | | |

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 335701 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED 05/11/2010 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| NORTHWOODS REHAB & E C F - HILLTOP | 1805 PROVIDENCE AVENUE  NISKAYUNA, NY 12309 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 325 | Continued From page 20  a resident had a significant weight loss, the MDS Coordinator should be notified. If a resident was on a diuretic she would expect weight loss due to fluid loss. She stated that she would not have done anything different for this resident because the resident was above her ideal body weight and wanted to lose weight. She stated this resident's weight loss was likely due to the diuretic. She was not concerned that the resident had close to a 10 lb weight loss, one week after admission and she did not inform the RD or the physician. She was asked how she knew what the resident's meal intake was, as there were numerous blanks on the Intake Sheets. She stated that she could tell by the few times the intake was documented, that she could ask the resident and that she sometimes did meal rounds. She stated the Intake Sheets were completed by the Certified Nurse Aides (CNAs) on the unit or the nurses in the Main Dining Room.  During an interview with the Director of Nursing on 5/11/10 at 12:25 pm, she stated that the resident's weight loss should have been reported to the RD and the physician.  10NYCRR 415.12(i)(1) | F 325 | | |