**STATE OF NEW YORK
DEPARTMENT OF HEALTH**

Capital District Regional Office   Frear Building   One Fulton Street   Troy, NY 12180-3281   (518) 408-5300

Richard F. Daines, M.D.
Commissioner

James W. Clyne, Jr.
Executive Deputy Commissioner

May 25, 2010

Mathew Varghese, Administrator/Executive Director
Northwoods Rehabilitation and Extended Care Facility - Hilltop
1805 Providence Avenue
Niskayuna, NY 12309

Facility: **Northwoods Rehabilitation and Extended Care Facility - Hilltop**
Medicare Provider #: **33-5701**
Type of Survey: **Recertification/Abbreviated**
Survey Exit Date: **05/11/2010**
POC Required By: **06/03/2010**
Category One Remedy Date(s):
    Directed Plan of Correction: **05/25/2010**
    Directed Inservice: **05/25/2010**
Termination Date: **11/11/2010**

Dear Mr. Varghese:

Enclosed is a copy of the survey report resulting from the Article 28 and Medicare/Medicaid survey of your facility by staff from this office. This is being sent to you as the Operator who has the ultimate responsibility for the facility. By copy of this letter, the original survey report is being forwarded to the facility Administrator. All references to regulatory requirements contained in this letter are found in Title 42, Code of Federal Regulations (CFR). Compliance with all State and Federal program requirements is necessary for continued participation in the Medicare/Medicaid programs.

The most serious deficiencies found during this survey were isolated deficiencies that constitute actual harm that is not Immediate Jeopardy **whereby significant corrections are required (G).**

New York State can impose Federal Category One remedies for the deficiencies found during this survey. This office is imposing:

**Directed Plan of Correction which follows.**

**Directed Inservice Training which follows.**

## Directed Plan of Correction

This office has imposed a Directed Plan of Correction. The facility must implement the following plan in accordance with the imposition of this remedy:

I. Obtain the services of a consultant, not employed by the facility, to develop and implement an acceptable plan of correction.

II. Convene the facility's/organization's Quality Assurance (QA) Committee to examine the deficiencies cited under:

**Fed - F - 0323 - 483.25(h) - Free of Accident Hazards/Supervision/Devices S/S = G**

The QA Committee is expected to, at a minimum, address the following:

A. Complete an assessment of the causative factors that may have contributed to the issues identified in each of the above deficiencies.

B. Identify the specific steps/interventions undertaken or proposed to eliminate and correct the causative factors identified during the assessment phase.

C. Identify the routine triggers or parameters the facility will implement for the above deficiencies, that will signal or alert all staff of an evolving problem or deficient practice situation. Indicate how this system will be carried out by the facility.

D. Specify how the facility will measure whether efforts are successful or unsuccessful in maintaining compliance.

## Directed Inservice

The following actions are required relative to the Inservice program for staff in the facility:

A. Prepare a plan for conducting facility Inservice programs addressing issues identified in the following deficiencies:

**Fed - F - 0323 - 483.25(h) - Free of Accident Hazards/Supervision/Devices S/S = G**

The plan should include the dates for the proposed scheduled training sessions, the name of the consultant instructor, not employed by the facility, who will conduct these programs, and targeted staff. Also include the mechanism for monitoring and evaluation of the effectiveness of the programs.

B. Based on the assessment factors and all other components of the Directed Plan of Correction prepare a comprehensive course outline for the Inservice programs for the above identified deficiencies.

This office may do any of the following upon receipt of the plan for the Directed Inservice: contact the facility by telephone to collect additional information on the implementation of its plan and request routine written progress reports.

2

A detailed Plan of Correction (POC) must be completed and returned to this office by the above referenced date. A copy should be retained for the records of the facility.

Your POC must contain the following:

- What corrective action(s) will be accomplished for those residents found to have been affected by the deficient practice;

- How you will identify other residents having the potential to be affected by the same deficient practice and what corrective action will be taken;

- What measures will be put in place or what systemic changes you will make to ensure that the deficient practice does not recur;

- How the corrective action(s) will be monitored to ensure the deficient practice will not recur, i.e., what quality assurance program will be put into practice.

- The date for correction and the title of the person responsible for correction of each deficiency.

All corrections should be completed by the 60th day from the survey exit date. This timetable will allow adequate time for the Department to review the implementation of your POC, and for you to complete any final corrections by the 90th day to avoid a denial of payment for new admissions.

If this office does not receive an acceptable POC within the established time limit, this office will advise the facility Administrator by letter. The POC will serve as the facility's credible allegation of compliance. This office will also certify compliance as the date of the credible allegation in applicable circumstances.

A post-survey revisit will be conducted to validate correction of deficiencies. If noncompliance with State and Federal requirements continues, the facility will be terminated from the Medicare/Medicaid programs six months from the survey date. Additionally, other remedies available to the Centers for Medicare and Medicaid Services (CMS) or the New York State Department of Health will be considered, including civil money penalties, denial of payment for new admissions and State fines.

New York State has established an Informal Dispute Resolution (IDR) process, in accordance with 42 CFR 488.331. This process affords your facility one (1) opportunity to provide additional information that may result in revision to the Statement of Deficiencies (SOD).

To dispute your SOD, you must submit a written request identifying the specific deficiencies in dispute. Your request must be accompanied by two (2) copies of your rationale for contesting the SOD, along with two (2) copies of any additional supporting information you want reviewed. All information must be presented in a manner that is consistent with the guidelines provided in DQS/DAL 06-17, issued October 3, 2006. Your request and all related submittals must be sent to the undersigned within ten (10) calendar days of your receipt of the SOD.

The IDR process entitles you to a panel review of your submitted information for disputing any deficiency that constitutes Substandard Quality of Care (SQC) or that has a Scope and Severity of "G" or above. An IDR determination for any deficiency of a Scope and Severity of "F" or below that

is not SQC will be based solely on a review of your written submittals.

The IDR process will not be used as a mechanism to challenge other aspects of the survey process including:

- Scope and Severity of deficiencies with the exception of Scope and Severity assessments that constitute SQC or Immediate Jeopardy
- Remedy(ies) imposed
- Alleged failure of the survey team to comply with a requirement of the survey process;
- Alleged inconsistency of deficiency citations among facilities; or
- Alleged inadequacy or inaccuracy of the IDR process.

Additional information concerning the IDR process is contained in CMS' State Operations Manual (SOM). Complete information about New York State's IDR process can be found in DQS/DAL 06-17, issued October 3, 2006. Please note that a POC must be submitted on a timely basis for all deficiencies at a Scope and Severity level of "B" or above, including those in dispute.

Survey reports and the Nursing Home Survey Profile Summary must be made available to residents and their representatives in a place that is readily accessible and in a manner that allows review without the need to ask nursing home staff for these documents. If necessary, a notice of the place where they are available is to be posted in a public place. Survey reports become disclosable immediately after being made available to the facility and must remain accessible until you receive the results of a new recertification survey. To protect resident confidentiality, do not post the resident roster.

Please contact me at (518) 408-5372 if you have any questions about the survey results.

Sincerely,

Catherine A. Leininger

Catherine Leininger
Acting Program Director for Continuing Care
Capital District Regional Office


Enclosure

cc: Centers for Medicare and Medicaid Services
Edie Sennett, Ombudsman Program Coordinator