IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

PEAK MEDICAL OKLAHOMA NO. 5,  )
INC., d/b/a WOODLAND VIEW     )
CARE AND REHABILITATION       )
CENTER,                       )
                              )
            Plaintiff,        )
                              )
vs.                           )   Case No. 10-CV-597-TCK-PJC
                              )
KATHLEEN SEBELIUS, in her official )
capacity as Secretary of Health and )
Human Services, United States )
Department of Health and Human )
Services, et al.,             )
                              )
            Defendants.       )

**OPINION AND ORDER**

Before the Court are the following: (1) Plaintiff's Motion for Preliminary Injunction (Doc. 2); (2) Kathleen Sebelius' Motion to Dismiss (Doc. 23); (3) Oklahoma Health Care Authority's Motion to Dismiss (Doc. 30); (4) Henry F. Hartsell, Jr.'s Motion in Support of Defendant United States' Motion to Dismiss (Doc. 39); and (5) Dorya Huser, Mary Fleming, and Tracy Kern's Joinder in Defendant Oklahoma Health Care Authority's Motion to Dismiss (Doc. 51).

I.     **Background**

Plaintiff Peak Medical Oklahoma No. 5, Inc. d/b/a Woodland View Care and Rehabilitation Center ("Woodland") is a nursing facility in Tulsa, Oklahoma that provides long-term care to approximately 100 residents, all of whom are infirm or disabled. Woodland has brought suit against: (1) Kathleen Sebelius, Secretary of Health and Human Services (sued in her official capacity) ("United States"); (2) Michael Fogarty, Chief Executive Officer of Oklahoma Health Care Authority (sued in his official capacity) ("OHCA"); (3) Henry F. Hartsell, Jr., Deputy Commissioner,

Protective Health Services, Oklahoma State Department of Health ("OSDH") (sued in his official capacity) ("Hartsell"); (4) Dorya Huser, Chief, Long Term Care, Protective Services, OSDH (sued in her individual capacity) ("Huser"); (5) Mary Fleming, Director, Survey Enforcement, OSDH (sued in her individual capacity) ("Fleming"); and (6) Tracy Kern, OSDH surveyor (sued in her individual capacity) ("Kern").

### A. Relevant Statutory and Regulatory Framework Governing Certification and Remedies

Woodland participates in both Medicare and Medicaid. The Medicare Act, established pursuant to Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, is a federal program designed to provide health insurance for aged and disabled persons. 42 U.S.C. §§ 1395c, 1395d. The Medicaid Act, established pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a joint program funded by both the federal and state governments designed to provide medical assistance to certain persons in need. The Medicaid Act is administered by the individual states participating in the program.

Payment from the federal government (under Medicare) and/or the State (under Medicaid) is made directly to the nursing home for services furnished to eligible beneficiaries of both programs. However, in order to qualify to receive payments under either program, a nursing home must be periodically "certified" through on-site "surveys," as meeting the health and safety requirements specified in the relevant statutes and regulations. 42 U.S.C. §§ 1395i-3(a)(3), (b)-(d), (g) (Medicare); 42 U.S.C. §§ 1396r(a)(3), (b)-(d), (g) (Medicaid); 42 C.F.R. § 483.1 *et seq.* (identical certification requirements under both programs). The federal Centers for Medicare and Medicaid Services ("CMS") are responsible for conducting these surveys. These surveys are

2

typically performed by state agencies under contract with CMS, and in Oklahoma, the state survey agency is OSDH.

A facility that is certified enters into a provider agreement with the federal government (under Medicare) and/or the State (under Medicaid). 42 U.S.C. § 1395cc(a) (Medicare); 42 U.S.C. § 1396a(a)(27) (Medicaid). If it is determined, through later surveys, that a previously-certified facility no longer meets the participation requirements, a variety of remedies may be imposed, including termination of the provider agreement under either program. 42 U.S.C. §§ 1395i-3(g), (h), 1395cc(b)(2) (Medicare); 42 U.S.C. §§ 1396a(a)(33)(B), 1396r(g), (h) (Medicaid). The available remedies differ depending on whether the facility's deficiencies "immediately jeopardize the health or safety of its residents" or "do not immediately jeopardize the health and safety of its residents." 42 U.S.C. § 1395i-3(h) (Medicare); 42 U.S.C. § 1396r(h) (Medicaid). Both the Medicare and Medicaid Acts also state that "nothing in [the paragraphs governing remedies] shall be construed as restricting the remedies available to [the Secretary/a State] to remedy a . . . facility's deficiencies." 42 U.S.C. § 1395i-3(h)(2)(A) (Medicare); 42 U.S.C. § 1396r(h)(1) (Medicaid).

**B.     Factual History**

In August 2010, OSDH completed a "revisit survey" of Woodland after earlier 2010 surveys demonstrated that Woodland was not in substantial compliance with the Medicare and Medicaid certification requirements. During the August 2010 survey, additional deficiencies were identified, and the surveyors determined that Woodland was not in substantial compliance with the following federal Medicare/Medicaid requirements:

        483.10(b)(11) – Notify of Changes (Injury/Decline/Room, Etc)
        483.25 – Provide Care/Services for Highest Well Being
        483.25(c) – Treatment/Srvcs to Prevent/Heal Pressure Sores
        483.60(a),(b) – Pharmaceutical Srvc-Accurate Procedures, Rph

(9/14/2010 CMS Letter, Ex. 2 to United States' Mot. to Dismiss; Summary of Deficiencies, Ex. 6 to United States' Mot. to Dismiss.) The parties agree that the residents of Woodland were not in "immediate jeopardy," as that term is used in the applicable statutes, as a result of the deficiencies cited in August 2010.

During a subsequent exit conference between Woodland officials and OSDH, OSDH officials advised Woodland that as a result of these deficiencies, its Medicare and Medicaid provider agreements would be involuntary terminated. This decision was also communicated to Woodland in a September 14, 2010 letter from CMS, which stated:

> Based on your facility's continued non-compliance with the requirements for Medicare/Medicaid participation, CMS has terminated your Medicare provider agreement, effective August 24, 2010 . . . . The CMS officials will notify the appropriate State officials concerning the termination of your provider agreement under Title XIX via copy of this letter, as the requirements for participation in the Medicaid program are substantially the same as those for participation in the Medicare program.

(9/14/2010 CMS Letter, Ex. 2 to United States' Mot. to Dismiss.) All Medicare and Medicaid payments to Woodland were to cease by September 24, 2010.

### C. Procedural History

After the termination decision was made, Woodland initiated an administrative appeal and filed a request for an expedited hearing before Administrative Law Judge ("ALJ") Steven Kessel ("ALJ Kessel"). During a status conference on September 7, 2010, ALJ Kessel granted Woodland's request and instructed Woodland and CMS to file their pre-hearing exchange no later than October

14, 2010. Judge Kessel advised the parties that the hearing would take place in November and that he expected to issue a ruling shortly thereafter.[1]

Woodland subsequently filed suit in this Court on September 21, 2010, alleging the following claims in its Verified Complaint ("Complaint"): (1) violation of Fifth and Fourteenth Amendment due process rights based on Defendants' termination of Woodland's provider agreements in the absence of a finding of immediate jeopardy to residents ("Count 1") (Compl. ¶¶ 74-77) (alleged against all Defendants); (2) declaratory relief as to whether (a) Defendants acted unlawfully and exceeded the scope of their authority under the Medicare and Medicaid Acts in terminating Woodland's provider agreements in the absence of a finding of immediate jeopardy to Woodland's residents, (b) Defendants' application of an "erroneous 'substantial compliance' standard created a substantive regulatory and/or enforcement legal standard that has not been properly promulgated" and, (c) Defendants' "adoption and ratification of unsubstantiated allegations of regulatory non compliance, alteration of patient medical records, and termination of Woodland's provider agreements violated Woodland's right to due process and/or the provisions of the Medicare and Medicaid Acts" ("Count 2") (*Id.* ¶¶ 78-80) (alleged against all Defendants); (3) temporary, preliminary, and permanent injunctive relief prohibiting the termination of Woodland's Medicare and Medicaid provider agreements ("Count 3") (*Id.* ¶¶ 81-82) (alleged against the United States and OHCA); (4) preservation of this Court's jurisdiction to adjudicate dispute pursuant to 5 U.S.C. § 705 by issuing injunctive relief ("Count 4") (*Id.* ¶¶ 83-86) (alleged against the United States and OHCA);

---

[1] In a recently filed Notice Regarding Status of Administrative Appeal (Doc. 55), Woodland informed the Court that ALJ Kessel held a status conference on November 2, 2010, wherein he advised Woodland and CMS that a hearing would be held on the merits of Woodland's administrative appeal on January 4, 2011.

(5) violation of federal rights under color of state law pursuant to 42 U.S.C. § 1983 ("Count 5") (*Id.* ¶¶ 87-92) (alleged against Hartsell, Huser, and Fleming); and (6) violation of federal rights under color of state law pursuant to 42 U.S.C. § 1983 ("Count 6") (*Id.* ¶¶ 93-95) (alleged against Kern).

Also on September 21, 2010, Woodland filed a Motion for Temporary Restraining Order ("Motion for TRO"), requesting an injunction preventing state and federal officials from: (1) involuntarily relocating its residents during the pendency of the administrative appeal; and (2) terminating Medicare and Medicaid payments during the pendency of the administrative appeal. On September 22, 2010, Judge Claire V. Eagan granted the Motion for TRO pending a preliminary injunction hearing scheduled before the undersigned on October 6, 2010 ("October 6 hearing"). Judge Eagan's Order stated as follows:

> The Court finds that a temporary restraining order should be entered to maintain the status quo until the judge presiding over this case is available to hold a preliminary injunction hearing. The parties are advised that no factual findings or legal conclusions stated in this order shall be treated as binding on the presiding judge, and the parties should be prepared to argue and present evidence on all aspects of plaintiff's request for a preliminary injunction.

(9/22/10 Order 3.) On October 4, 2010, the United States filed a Motion to Dismiss and Response to Plaintiff's Motion for Injunctive Relief, arguing, *inter alia*, that this matter should be dismissed for lack of subject matter jurisdiction. Thereafter, on October 5, 2010, the OHCA filed a Motion to Dismiss, which adopted the United States' Motion to Dismiss and presented additional arguments regarding subject matter jurisdiction and venue.

During the October 6 hearing, the parties presented argument as to the pending motions to dismiss and Woodland's request for a preliminary injunction. At the conclusion of the hearing, the undersigned requested supplemental briefing regarding this Court's subject matter jurisdiction. Pursuant to the Court's direction, Woodland filed a Supplemental Brief in Support of Plaintiff's

Motion for a Preliminary Injunction and in Opposition to the Currently Pending Motions to Dismiss on October 13, 2010; the United States filed a Supplemental Brief in Support of Defendant's Motion to Dismiss and Response to Plaintiff's Motion for Injunctive Relief on October 20, 2010; and Woodland filed a Reply to [the United States'] Supplemental Brief on October 22, 2010. Further, Defendants Huser, Fleming, and Kern filed a Motion to Dismiss on October 26, 2010, which Woodland responded to on October 27, 2010.

## II.   United States' Motion to Dismiss [2]

The United States moves to dismiss Woodland's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") because Woodland has not exhausted its administrative remedies under the Medicare Act.[3]

### A.   Rule 12(b)(1) Standard

Federal courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "A court lacking jurisdiction must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee Cnty. Bd. of Cnty. Comm'rs*, 895 F. Supp. 279, 280 (D. Kan. 1995). The party seeking to invoke a federal court's jurisdiction bears the burden of establishing that such jurisdiction is proper. *Winnebago Tribe of Neb. v. Kline*, 297 F. Supp. 2d 1291, 1299 (D. Kan. 2004). When federal jurisdiction is challenged, the plaintiff bears the burden of showing why the case should not be dismissed. *Id.*

---

[2] Defendant Hartsell joins in the United States' Motion to Dismiss. (*See* Doc. 39.) For ease of reference, however, the Court will refer to the motion as that of the United States.

[3] As noted more fully below, *see infra* note 4, this argument applies equally to the Medicaid Act.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Id.* "In reviewing a facial attack, the district court must accept the allegations in the complaint as true." *Id.* The second type of attack goes beyond the allegations in the complaint and challenges "the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Here, the United States' motion "challenges whether [Woodland] should have exhausted the administrative remedies available under [the Medicare Act] – this is a fact upon which subject matter jurisdiction depends." *Baumeister v. New Mexico Comm'n for the Blind*, 425 F. Supp. 2d 1250, 1258 (D.N.M. 2006). In such instances, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Holt*, 46 F.3d at 1003. "In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

**B. Administrative Remedies**

The Court is not authorized to address claims arising under the Medicare and Medicaid Acts until after the conclusion of an administrative review process.[4] Specifically, facilities dissatisfied

---

[4] Although the citations herein reference the Medicare Act, "the appeals procedures set forth for reviewing . . . [a] determinatio[n] affecting participation in the Medicare program also apply to [a] determination to terminate a facility's Medicaid provider agreement." *Forum Healthcare Grp., Inc. v. The Ctrs. for Medicare and Medicaid Servs.*, 495 F. Supp. 2d 1321, 1328 (N.D. Ga. 2007) (citing 42 C.F.R. § 498.3(a)(2)(i); 42 C.F.R. § 498.4); *see Cathedral Rock of N. College Hill, Inc. v. Shalala*, 223 F.3d 354, 366 (6th Cir. 2000) ("The regulations provide that the appeals procedures set forth for reviewing the Secretary's determinations affecting participation in the Medicare program also apply to the Secretary's determination to terminate a nursing facility's Medicaid provider agreement."). Therefore, when a dually certified facility, such as Woodland, "challenges

with a determination of noncompliance are entitled to a hearing before an ALJ of the United States Department of Health and Human Services' Departmental Appeals Board ("DAB"), and may appeal the ALJ's ruling to the DAB. If a facility is then dissatisfied with a decision to terminate provider agreements, that facility is "entitled to a hearing thereon by the Secretary . . . and to judicial review of the Secretary's final decision after such hearing as is provided in [42 U.S.C. § 405(g)] [("Section 405(g)")]." 42 U.S.C. § 1395cc(h)(1). Section 405(g) states as follows:

> Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow.

42 U.S.C. § 405(g). "In order to obtain judicial review under § 405(g), a party must comply with '(1) a nonwaivable requirement of presentation of any claim to the Secretary, and (2) a requirement of exhaustion of administrative review, which the Secretary may waive.'" *Cathedral Rock*, 223 F.3d at 359 (citing *Heckler v. Ringer*, 466 U.S. 602 (1984) (dismissing suit challenging Secretary's actions under Medicare Act due to failure to exhaust administrative remedies as required by Section 405(g))).

Further, under 42 U.S.C. § 1395ii, the Medicare Act expressly incorporates 42 U.S.C. § 405(h) ("Section 405(h)"), which limits judicial review of the Secretary's findings and final decision as follows: "No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided" and no action against the Secretary

---

a determination that it is not in substantial compliance with the common Medicaid and Medicare regulations and a termination of its participation in both programs, the facility must seek review of this determination through the Medicare administrative appeals procedure." *Cathedral Rock*, 223 F.3d at 366.

"shall be brought under section 1311 or 1346 of Title 28 to recover on any claim *arising under*" the Medicare Act. 42 U.S.C. § 405(h) (emphasis added).

In *Heckler v. Ringer*, 466 U.S. 602 (1984), the Supreme Court provided guidance regarding when a claim "arises under" the Medicare Act, as that term is used in Section 405(h). Therein, the Court found that the claims at issue were "inextricably intertwined" with a claim for Medicare benefits and specifically "held that a challenge of a Secretary's decision not to provide reimbursement to individuals who receive a particular medical treatment . . . arises under the Medicare Act." *Cathedral Rock*, 223 F.3d at 359 (citing *Ringer*, 466 U.S. at 615-617). In a subsequent Supreme Court decision, *Shalala v. Illinois Council on Long Term Care, Incorporated*, 529 U.S. 1 (2000), the Court reaffirmed *Ringer*, noting that the bar of Section 405(h) "demands the 'channeling' of virtually all legal attacks through the agency." *Id.* at 13. While the Court noted that this system comes with a "price" – namely, "occasional individual, delay-related hardship" – the Court concluded that "[i]n the context of a massive . . . program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified." *Id.* Thus, Section 405(h) "purports to make exclusive the judicial review method set forth in [Section 405(g)]" and "virtually all legal challenges to an administrative determination must be channeled through the Secretary's administrative process before judicial review is available as set forth in [Section] 405(g)." *Cathedral Rock*, 223 F.3d at 359 (internal citations omitted).

C. **Analysis**

The United States argues that because Woodland admittedly has not exhausted its administrative remedies pursuant to the Medicare Act, this Court is without subject matter

jurisdiction over Woodland's Complaint. Woodland responds by contending that the jurisdictional bar presented by Sections 405(g) and (h) is inapplicable in the instant case because this matter does not "arise under" the Medicare Act. Rather, according to Woodland, this matter "arises under" Section 705 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 705 ("Section 705"),[5] and jurisdiction is conferred pursuant to 28 U.S.C. § 1331. (*See* Hr'g Tr. 91, October 6, 2010 ("We're saying that the cause of action is created by the [APA], and [that] . . . jurisdiction is available under [28 U.S.C.] 1331"); Pl.'s Supp. Br. 5 ("Woodland's claim is grounded entirely on § 705 and does not arise under the Medicare Act.").) As outlined more fully below, the Court disagrees with Woodland's position.

In arguing that this matter arises under Section 705 of the APA instead of the Medicare Act, Woodland's argument focuses on the nature of interim relief sought in the motion for preliminary injunction, (*see, e.g.*, Hr.'g Tr. 88 (framing argument regarding basis of requested relief in terms of what Woodland is seeking "in the *preliminary injunction* that [is] before the Court") (emphasis added), 90 (same); Pl.'s Supp. Br. 1 (arguing Woodland's "*request for interim relief*" is independent of Medicare Act) (emphasis added); *id.* (arguing that "Woodland [is] merely ask[ing] this Court to

---

[5] Section 705 provides:

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

11

exercise its authority under [Section 705]" in its "*motion for a preliminary injunction*") (emphasis added)), and characterizes this action as merely seeking a stay pending the administrative review process, (*see* Hr'g Tr. 90 ("All we're asking is that the effective date of the administrative decision be stayed under Section [705]."); Pl.'s Supp. Br. 5 (stating that Woodland is asking this Court "to issue such process as may be necessary to stay the effective date of agency action"); *id.* 9 (stating same)). The problem with such an approach is that Woodland frames its argument around the requested interim relief without any regard to the underlying claims asserted in its Complaint. In this manner, Woodland is viewing its request for interim relief in a vacuum, without acknowledging that its claim for such relief is necessarily tied to and based upon the allegations asserted in the Complaint.

In reviewing the Complaint, the Court finds Woodland's characterization of this matter to be inconsistent with the true nature of the action. As outlined above, Woodland's Complaint alleges six counts. (*See supra* Section I.C.) A review of the allegations contained therein demonstrate that, rather than merely seeking a stay pending administrative review, Woodland seeks injunctive relief, declaratory relief, compensatory damages, and punitive damages, (*see* Compl., Request for Relief, ¶¶ A-H), based on the general allegation that Defendants terminated Woodland's Medicare and Medicaid provider agreements in a manner that was unlawful under the Medicare Act, (*see id.* ¶¶ 74-77 (alleging that Defendants violated Woodland's due process rights by terminating the provider agreements in a manner that exceeded their authority because termination decision was made in the absence of a finding of immediate jeopardy); *id.* ¶¶ 78-80 (seeking declaratory relief as to whether Defendants exceeded scope of authority under Medicare and Medicaid Acts by terminating the provider agreements in the absence of a finding of immediate jeopardy and whether such actions

violated Woodland's right to due process and/or the provisions of the Medicare and Medicaid Acts); *id.* ¶¶ 81-82 (seeking injunctive relief prohibiting the termination of Woodland's Medicare and Medicaid provider agreements "for the reasons stated above" – i.e., for, *inter alia*, the reasons outlined in Counts 1 and 2); *id.* ¶¶ 87-92 (alleging § 1983 claim against Defendants Hartsell, Huser, and Fleming based on allegations that said Defendants misapplied the term "substantial compliance" under the Medicare and Medicaid Acts and adopted erroneous allegations of regulatory noncompliance with the Medicare and Medicaid Acts);[6] *id.* ¶¶ 93-95 (alleging § 1983 claim against Defendant Kern for altering medical records in order to make it appear that Woodland failed to provide a resident with prescribed medications).[7]

In assessing whether Woodland's action "arises under" the Medicare Act, the Court finds instructive other cases involving similar challenges to a decision to terminate Medicare and/or Medicaid provider agreements. For example, the plaintiff in *Cathedral Rock of North College Hill, Incorporated v. Shalala*, 223 F.3d 354 (6th Cir. 2000), challenged the decision to terminate its provider agreements under Medicare and Medicaid without a finding that the relevant regulatory violations resulted in immediate jeopardy to the residents. Specifically, the facility's "complaint . . . [sought] declaratory relief challenging the lawfulness of the Secretary's termination of [the

---

[6] Although Count 5 of Woodland's Complaint does not specifically cite to the Medicare or Medicaid Act, it incorporates by reference all earlier paragraphs of the Complaint, which do include explicit citations to the Acts. Further, the facts alleged within Count 5 make clear that the allegedly unsubstantiated allegations of noncompliance were those cited by the surveyors pursuant to such Acts.

[7] Similar to Count 5, Count 6 does not specifically cite to the Medicare or Medicaid Act but incorporates by reference all earlier paragraphs of the Complaint. Further, Kern's alleged alteration of medical records, as contained within Count 6, was the basis of one of the cited deficiencies under the Medicare and Medicaid Acts giving rise to the decision to terminate Woodland's provider agreements.

13

facility's] Medicare and Medicaid provider agreements and imposition of additional remedies." *Cathedral Rock*, 223 F.3d at 361. Like Woodland, the facility also requested an injunction "preventing the Secretary from terminating its agreements and from refusing to pay for covered services to its eligible residents 'pending the outcome of an administrative hearing.'" *Id.* (citing facility's complaint). The Sixth Circuit held that the facility had to "exhaust its administrative remedies before [judicial] review [could] take place" and dismissed the complaint for lack of subject matter jurisdiction. *Id.*

Similarly, in *Forum Healthcare Group, Inc. v. The Centers for Medicare and Medicaid Services*, 495 F. Supp. 2d 1321 (N.D. Ga. 2007), numerous nursing homes sued CMS and the Georgia Department of Human Resources for injunctive relief, seeking a temporary restraining order requiring continuation of Medicare and Medicaid payments during the pendency of an administrative appeal challenging the decision to terminate the facilities' provider agreements. The court held that it did not have subject matter jurisdiction over plaintiffs' claim because a "favorable resolution of [p]laintiffs' claim . . . would result in requiring [d]efendants to continue paying [p]laintiffs under their Medicaid and Medicare agreements" and was therefore "inextricably intertwined with [p]laintiffs' substantive challenge to [d]efendants' termination decisions." *Id.* at 1328 (internal quotations omitted) (citing *Cathedral Rock*, 223 F.3d at 362)).

The facts presented by Woodland's action are similar to those presented in *Cathedral Rock* and *Forum Healthcare*. Specifically, like the plaintiff facilities in those cases, the crux of Woodland's action challenges the decision to terminate its Medicare and Medicaid payments on the basis that such decision was made unlawfully and in an excess of Defendants' authority under the Medicare Act. The Court is hard-pressed to find that, given the ultimate connection between

14

Woodland's core allegation and the Medicare Act, this action does not "arise under" such Act. *See also Trade Around the World of Pa. v. Shalala*, 145 F. Supp. 2d 653, 657, 662 (W.D. Pa. 2001) (finding lack of subject matter jurisdiction over nursing facility's challenge to termination of Medicare and Medicaid provider agreements based on contention that defendants exceeded their authority under Medicare Act in terminating agreements) (stating that the Supreme Court "has made very clear that the claim [p]laintiff expresses as a statutory or constitutional contention, i.e., that its due process rights were violated by Defendants acting outside their statutory authority, is subject to court review of the agency determination only *after* the action has been channeled through the agency."); *Sunrise Healthcare Corp. v. Shalala*, 50 F. Supp. 2d 830, 832-834 (S.D. Ill. 1999) (holding that claim, which challenged termination decision from Medicare program when such decision was made absent a finding of immediate jeopardy, "arose under" Medicare Act and was therefore subject to exhaustion requirements of Section 405(h)).

Further, Woodland's action seeks the continuation of Medicare and Medicaid payments during the pendency of its administrative appeal, demonstrating that, although Woodland attempts to characterize this action as outside the bounds of the Medicare Act, it is, at its core, inextricably intertwined with its substantive challenge to the termination decision. *See Cathedral Rock*, 223 F.3d at 363 (finding that facility's "claim that the Secretary erred in terminating its participation in the Medicare program absent a finding or immediate jeopardy [was] 'inextricably intertwined' with [facility's] substantive challenge to the Secretary's termination decision because a favorable resolution of this claim would result in the reinstatement of its Medicare provider agreement"); *Forum Healthcare*, 495 F. Supp. 2d at 1328 (finding lack of subject matter jurisdiction because favorable resolution of plaintiffs' claim would require defendants to continue paying Medicare and

Medicaid payments and claim was therefore "inextricably intertwined" with substantive challenge to termination decision); *Sunrise Healthcare Corp.*, 50 F. Supp. 2d at 834, 835 ("No matter how it is framed or characterized, the claims raised by [plaintiff] 'arise under' the [Medicare] Act, and seek the continuation of benefits under the [Medicare] Act.") ("Notably, this lawsuit was commenced only days before the benefits were scheduled to expire [and] this [c]ourt simply cannot divorce the claims raised by [plaintiff] from its ultimate goal of the continued receipt of funds and finds that the authority and procedural challenges raised here are 'inextricably intertwined' with the claim for funds under the [Medicare] Act.").[8]

Woodland attempts to distinguish this line of cases by relying on its claim under Section 705 of the APA, (*see* Compl. ¶¶ 83-86 (Count 4) (alleging claim under 5 U.S.C. § 705 for "Preservation of this Court's Jurisdiction to Adjudicate Dispute" against United States and OHCA), and arguing that the above-cited cases are inapposite because they did not involve such a claim. According to Woodland's position, the inclusion of Section 705 in this action somehow trumps any requirement that it exhaust its administrative remedies pursuant to the Medicare Act. The Court finds multiple problems with Woodland's reliance on Section 705. First, such a position ignores what this case is truly about – namely, a challenge to Defendants' decision to terminate Woodland's Medicare and Medicaid provider agreements without a finding of immediate jeopardy, based on the allegation that such decision was unlawful under the Medicare Act. Given the true nature of Woodland's action,

---

[8] The Court is not finding, as Woodland suggests in its Reply to the United States' Supplemental Brief, that the continuation of payments is some sort of "litmus" test in assessing whether a claim "arises under" the Medicare Act. (*See* Pl.'s Reply 1-2.) It is one factor that, in this matter, demonstrates the true nature of Woodland's action.

Woodland cannot bypass the requirement that it exhaust its administrative remedies under the Medicare Act by reliance on Section 705.

Second, Woodland is unable to provide any case law supporting a similar use of Section 705 in the Medicare context – i.e., where a court held that a facility was not required to exhaust administrative remedies because it was seeking interim relief under the APA. (*See* Hr'g Tr. 95 (failing to identify any Medicare cases utilizing Section 705 in the manner advanced by Woodland in response to the undersigned's questioning); Pl.'s Supp. Br. n. 1 ("Woodland has found no decision addressing the exact issue before this Court.").) In fact, the only authority offered by the parties and located by the Court implicitly rejects use of Section 705 in order to confer jurisdiction under similar circumstances. Specifically, in *Faith Home Health Services, Incorporated v. Shalala*, No. 98-329-A, 1998 WL 901619 (M.D. La. May 8, 1998), the court held that a home health care agency's claim that the Secretary withheld Medicare reimbursements in contravention of provisions of the Medicare Act and Section 705 of the APA was barred for lack of subject matter jurisdiction. The court found that plaintiff's claims were "inextricably intertwined" with determinations made under the Medicare Act and "[t]he fact that a claim might be foun[d] to 'arise under' the federal question statute based upon alleged violations of federal statutory . . . provisions (in addition to the Medicare Act) d[id] not allow a plaintiff to bypass the administrative remedies afforded by the [Medicare] Act." *Id.* at *3 (rejecting argument that plaintiff could overcome lack of subject matter jurisdiction by reliance on Section 705 of the APA). Therefore, for the reasons outlined herein, despite Woodland's attempts to carefully characterize this action as requesting limited, interim relief under Section 705, Woodland cannot escape the fact that its action "arises under" the Medicare Act and is thus subject to the exhaustion of administrative remedies requirement.

Finally, the Court notes that Woodland has devoted much effort to explaining the harm that will potentially befall its residents and its business if it is forced to pursue this dispute through the Medicare administrative review process without interim relief from this Court. The Court is sympathetic to such concerns, especially with regard to Woodland's residents, but is simply without the requisite subject matter jurisdiction to grant the relief requested by Woodland. As noted by other courts, "participation in the Medicare program is a voluntary undertaking" and "involves a degree of risk." *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 720-21 (6th Cir. 1991). By participating in this program, Woodland has subjected itself to the administrative review process provided for therein, and, although such process is arguably imperfect and can sometimes result in "hardship," *see Cathedral Rock*, 223 F.3d at 359, it is not within this Court's jurisdiction to alter this process.

## III. OHCA's Motion to Dismiss [9]

In a separate Motion to Dismiss, OHCA argues that: (1) this Court lacks subject matter jurisdiction over this matter; and (2) venue is improper. In arguing a lack of subject matter jurisdiction, OHCA "incorporates by reference the arguments by [the United States]" in addition to advancing additional arguments unique to OHCA. (OHCA's Mot. to Dismiss 3 (citing United State's Mot. to Dismiss 6-13).) Because, as discussed above, the Court finds that it lacks subject matter jurisdiction for the reasons advanced by the United States, the Court grants OHCA's motion to dismiss on such basis.

---

[9] Defendants Huser, Fleming, and Kern join in OHCA's Motion to Dismiss. (*See* Doc. 51.) For ease of reference, however, the Court will refer to the motion as that of OHCA.

## IV. Conclusion

For the reasons outlined herein, the Court finds that Woodland is subject to the administrative remedies outlined in the Medicare Act. Because such remedies have not been exhausted, this Court lacks subject matter jurisdiction. The Court therefore GRANTS Defendants' motions to dismiss (Docs. 23, 30, 39, and 51), and Woodland's Motion for Preliminary Injunction (Doc. 2) is DENIED AS MOOT. The temporary restraining order, previously entered by the Court (*see* Doc. 10), is hereby dissolved, and this matter is terminated. A Judgment of Dismissal will be issued forthwith.

**SO ORDERED this 5th day of November, 2010.**

*/s/ Terence C. Kern*
**TERENCE C. KERN**
**United States District Judge**